UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| COREY DONOVAN | ) | |
| | ) | |
| v. | ) | 1:24-cv-00392-JL-TSM |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

<u>UNITED STATES' OBJECTION TO DEFENDANT'S § 2255 MOTION</u>

## I. Introduction

In March 2021, while defendant/petitioner Corey Donovan was on federal supervised release for a 2007 armed bank robbery, members of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") received information that he was in possession of one or more firearms. A federal search warrant was obtained and on March 26, 2021, a shotgun and assorted ammunition were seized from the defendant's green Jeep and other locations at his Wilmot, NH residence. Charges followed. In October 2021, a federal jury convicted the defendant of one count of being a felon in possession of a firearm and ammunition following a multi-day trial. He subsequently filed a motion to dismiss for alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963), for a new trial, or for a new suppression hearing, asserting various claims. Those were ultimately denied following a hearing at which his trial counsel, Matthew Stachowske, Esq., testified. At sentencing, the Court imposed a sentence of 110 months' imprisonment. Defendant appealed his conviction and sentence to the First Circuit which affirmed in a published decision in September 2024. *See United States v. Donovan*, 116 F.4th 1 (1st Cir. 2024).

Now before the Court is Defendant's timely-filed petition for relief under 28 U.S.C. § 2255. Defendant makes numerous claims in his pro se § 2255 petition, which the government summarizes as follows:

Claim 1: Defendant primarily contends his trial counsel Matthew Stachowske, Esq. was ineffective for an assortment of alleged transgressions: (a) abandoning an argument that law enforcement was early in executing the search warrant at the defendant's property; (b) failing to object to the seizure of defendant's surveillance videos during execution of the warrant; (c) failing to impeach Andover Police Officer Jacob Hubbard at trial; (d) failing to review interview videos of the informant who provided information relied upon in obtaining the search warrants and otherwise discredit her; (e) failing to answer the defendant's phone calls; (f) failing to raise an "actual innocence defense" because defendant claims to have had his "civil rights restored"; and (g) failing to ask for a limiting instruction regarding the introduction of a photograph of numerous knives and bows seized from the defendant's residence.

Claim 2: Next, defendant contends the Government committed prosecutorial misconduct by failing to disclose alleged impeachment information about a government informant who did not testify in the defendant's case.

Claim 3: Defendant accuses Trial Juror #4 of failing to inform the parties during jury selection that he was allegedly under investigation for failure to remain unbiased in the cases he was presiding over as a New Hampshire marital master, or to disclose that his brother had been the victim of a firearm offense.

Claim 4: Defendant claims that at his sentencing, the Court should not have concluded that two oil filters seized from his property were "firearm silencers" within the meaning of 18 U.S.C. § 921(a)(24).

Claim 5: Finally, defendant claims that the statute of conviction, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to the defendant.

The government responds to each of these claims separately below.

## II. Standard of Review

To present a viable § 2255 habeas petition, a prisoner or person on supervised release must state a claim to vacate his sentence based upon allegations that the sentence was imposed in violation of the Constitution or federal law, by a court that lacked jurisdiction or in excess of the maximum authorized by law, or that his sentence is otherwise subject to collateral attack. See *United States v. Gallant*, 306 F.3d 1181, 1188-89 (1st Cir. 2002); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of showing that he is entitled to relief under § 2255. *David*, 134 F.3d at 474.

It is well settled that a § 2255 motion does not suffice as a substitute for direct appeal, nor can it be utilized to relitigate issues that were raised and adversely decided on appeal. *See United States v. Butt*, 731 F.2d 75, 76 n.1 (1st Cir. 1984) ("[A] § 2255 motion may not revive issues previously determined on direct appeal."); *United States v. Pellerito*, 968 F.2d 1210, 1210 (1st Cir. 1992) (similar). If a petitioner fails to raise an argument at trial or on appeal, review under § 2255 requires "cause" for having procedurally defaulting the claim and "actual prejudice" from the alleged errors. *See Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) (citing *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002)).

A claim of ineffective assistance of counsel requires a defendant to show that 1) his counsel made errors so serious that counsel's performance fell below an objective standard of reasonableness and 2) defendant suffered prejudice as a result. *Rivera v. Thompson*, 879 F.3d 7, 12 (1st Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984)). Defense counsel's performance is presumed reasonable and the burden is on the defendant to show otherwise. *Sleeper v. Spencer*, 510 F.3d 32, 38-30 (1st Cir. 2007) ("Counsel has wide latitude in deciding how best to represent a client, and benefits from a strong presumption that he or she

rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions." (internal citations omitted)).

## III. Discussion

### A. Attorney Stachowske's Representation Was Not Defective

Despite his claims of myriad errors and deficiencies, the record reflects that defendant's trial counsel's performance was objectively reasonable and defendant suffered no prejudice. The petition fails to demonstrate that counsel's representation was deficient.

***Claim 1(a): Failing to Pursue the Claims of Early Execution of the Warrant***

Defendant's initial claim is that Attorney Stachowske was ineffective for failing to press an argument regarding the alleged early execution of the search warrant on March 26, 2021. This issue was addressed at length in an October 12, 2021 motion hearing where Attorney Stachowske explained that he did not have a good faith basis to present the argument because the executing officers did not, in fact, begin the search until 6:00 am. *See* October 12, 2021 Motion Hearing Transcript, Case 21-cr-88, Dkt. No. 69, at 2:14-7:16, attached hereto as Exhibit A.[1] It was objectively reasonable for Attorney Stachowske to decline to pursue an argument he deemed baseless.

***Claim 1(b): Failing to Object to the Seizure of the Defendant's Surveillance Videos***

The March 2021 search warrant of defendant's property in Wilmot, NH was signed by Hon. Andrea Johnstone on March 24, 2021, and docketed at 21-mj-79-01-AJ. Attachment B to the warrant, attached hereto as Exhibit B, authorized the seizure of, inter alia, "evidence pertaining to the possession of firearms or ammunition," "photographs of firearms or persons in

[1] For ease of reference, the government has prepared an Appendix of the selected portions of testimony and other Court documents cited herein.

possession of firearms," "data recording devices located on the property," and "photographs, letters, documents that establish the persons who have control over property and vehicles searched and from which evidence is seized." Attachment B ¶ 1. It additionally authorized the seizure of "any photographs and videos of firearms of [sic] Corey Donovan in possession of firearms," and "any and all documents, records and articles of personal property showing the identity of persons occupying, possessing, residing in, owning, frequenting, or controlling the subject premises." *Id.* ¶¶ 8, 13.

During the warrant execution, ATF agents seized a home security recording device that the defendant had installed on the property. ATF Agent Forte testified that the recording device contained some 3,000 recorded hours of footage, but that his review focused on the 24-48 hours leading up to the execution of the search on March 26, 2021. *See* Trial Testimony of ATF Special Agent John Forte, October 14, 2021, Case 21-cr-88, Dkt. No. 74, at 31:19-22; 33:3-6, attached as Exhibit C. At trial, the government introduced certain clips of defendant on the property during that time frame, including in the area of the Jeep where the firearm was found. Given that the warrant plainly authorized the seizure of the video footage by the government, it was not ineffective assistance to fail to seek suppression of that evidence.

***Claim 1(c): Failed Impeachment of Officer Hubbard***

Defendant argues that Attorney Stachowske failed to impeach Officer Hubbard during his trial testimony. Petition at 8-9. The alleged grounds for impeachment are that Officer Hubbard "falsely claimed on the stand that he helped [Andover Chief Mahoney] execute the search warrant of the defendant's Jeep in 2019." *Id.* at 8. In support, Defendant appears to cite partial testimony from Chief Mahoney in an unidentified earlier state court proceeding involving 2019 charges arising out of his possession of a different firearm. Petition at A3. Apparently Chief

Mahoney identified another individual—Sargent Poitres—as assisting the 2019 search of defendant's Jeep, and not Officer Hubbard. Out of this apparent discrepancy, defendant claims Officer Hubbard lied about his involvement in the execution of the 2019 state search warrant and that it was ineffective of Attorney Stachowske to impeach him on this issue.

The government does not concur in the suggestion that Officer Hubbard was untruthful, but the court need not resolve that question. Hubbard's testimony at the 2021 federal trial was relevant because in June 2020 he returned a gun scope and gun cleaning kit to the defendant. Those same items were later seized during execution of the March 2021 federal search warrant. *See* Trial Testimony of Jacob Hubbard, October 13, 2021, Case 21-cr-88, Dkt. No. 67, at 79:17-88:7, attached as Exhibit D. The defendant testified at trial, acknowledging that both the gun scope and the cleaning kit found during the 2021 federal search warrant were the same items returned to him by Andover Police in 2020. *See* Defendant's Trial Testimony, Case 21-cr-88, Dkt. No. 68, at 33:6-17; 43:15-22; 44:12-18, attached as Exhibit E. The issue was litigated on a Rule 404(b) motion prior to trial, Case 21-cr-88, Dkt. No. 37 (Govt's Response) at 3-4, and the government argued at trial that the presence of the defendant's gun scope and cleaning kit in areas where the ammunition and firearm accessories were found tended to show the defendant's ownership of the charged prohibited items. It was not ineffective assistance to fail to cross examine the witness about a minor collateral issue the defendant ultimately conceded in his own testimony.

***Claim 1(d): The Informant Videos***

Attorney Stachowske testified under oath in March 2023 that he reviewed the informant videos in question. *See* March 27, 2023 Hearing Transcript, Dkt. No. 113 at 42:17-18 ("I can all but assure you that I reviewed those videos" in September 2021), attached as Exhibit F.

Defendant, however, does not identify any portion of the allegedly unwatched videos that would have assisted in his defense. Nor could he. As Judge Barbadoro explained at the September 24, 2021 hearing on defendant's motion to suppress, whether or not the informant Caitlin told Agent Forte the truth or not had no impact on the *Franks* motion regarding Agent Forte's affidavit. *See* Sept. 24, 2021, Hearing Transcript, Dkt. No. 66 at 24:1-25:8 ("The lie by the confidential source is not a misstatement by the affiant unless he's lying about what the confidential source said to him."), attached as Exhibit G. This allegation does not give rise to an ineffective assistance claim.

***Claim 1(e): Defendant's Phone Calls to Counsel***

Defendant's allegation regarding communications with Attorney Stachowske fails under *Strickland* in that he does not identify how the alleged failure to return his phone calls prejudiced him such that there is a "reasonable probability" that the "result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The charged firearm was found strapped to the roll bar in defendant's Jeep. Assorted ammunition was found in different locations around the property. The government introduced substantial circumstantial evidence that the defendant had possession, custody and control over the Jeep and the locations where ammunition was found. Defendant testified in his own defense, attempting to claim the firearm and ammunition belonged to his live-in girlfriend. The jury rejected this contention and convicted the defendant. Whether the defendant and his counsel had spoken more on the phone would not have changed the result of the proceeding.

***Claim 1(f): An Actual Innocence Defense***

Counsel's failure to raise an actual innocence defense was reasonable under the circumstances because defendant had not had his "civil rights restored" as he claimed.

Defendant was previously convicted in this Court of conspiracy to commit bank robbery, aiding and abetting bank robbery, and possession of a firearm in furtherance of a crime of violence. PSR ¶ 50. He received a sentence of 154 months imprisonment and three years' supervised release. He was still on federal supervised release at the time of the instant offense. Defendant stipulated at trial that he was a previously convicted felon and that he knew he was a previously convicted felon. *See* Oct. 14, 2021, Trial Transcript, Dkt. No. 78 at 159:11-160:9, attached as Exhibit I. Defendant's civil rights have not been restored. Raising an actual innocence defense on those grounds would have been frivolous, and the failure to do so cannot be ineffective lawyering.

***Claim 1(g): No Limiting Instruction on a Photo of Knives/Bows***

Defendant complains of the alleged improper admission of Rule 404(b) evidence, which consisted of a photograph of knives and hunting bows seized from his residence. The photograph was not a government exhibit. Rather, the photograph was <u>admitted by the defendant</u> as Defendant's Exhibit G at trial during the defendant's own testimony on re-direct. *See* Defendant's Trial Testimony, Case 21-cr-88, Dkt. No. 68, at 70:11-71:5, attached as Exhibit E. The government asked three follow-up questions about the photograph on re-cross. *Id.* at 71:17-72:8. The government's questions were fairly responsive to defendant's testimony on re-direct, and the failure to seek a limiting instruction under such circumstances is not ineffective assistance.

**B. The Government Did Not Commit Prosecutorial Misconduct**

Defendant alleges the government committed prosecutorial misconduct by not disclosing testimony from Michael Bennett in an unrelated trial in September 2021 that he claims further

demonstrates that the informant Caitlin was untruthful about her own possession of an unrelated firearm in December 2020.

Some additional background is needed: In the weeks leading up to defendant's October 2021 trial, Caitlin testified at the trial of another, unrelated individual, Timothy Adjutant, in Case No. 21-cr-36-SM, regarding a December 22, 2020 incident in Somersworth, NH. Specifically, Caitlin informed law enforcement that she ditched a firearm in a Cumberland Farms immediately prior to being arrested on an outstanding warrant, and that Mr. Adjutant had provided her the firearm moments earlier. Mr. Adjutant contemporaneously confessed to his role in the incident, acknowledging having given the gun to Caitlin, and providing details about when/how he acquired it. Caitlin eventually pled guilty to federal firearm charges arising out of that incident, but Mr. Adjutant went to trial. At the Adjutant trial in September 2021, as part of *defendant's* case-in-chief, Adjutant introduced testimony from Michael Bennett, claiming that Caitlin was lying about receiving the firearm from Adjutant on December 22, 2020. Mr. Adjutant was acquitted on September 23, 2021. To the government's knowledge, the Bennett testimony has never been reduced to a transcript. *See* Docket 21-cr-36-SM.

Donovan faults the government for not providing the Bennett testimony on September 22, 2021 from the Adjutant matter to him in this case, but he points to no obligation the government had to do so, whether under *Brady*, *Giglio*, the Jencks Act or Rule 16. Donovan does not claim the Bennett testimony is exculpatory. Caitlin was not a witness in the Donovan trial. The government nonetheless provided her criminal history and recordings of her interview with ATF from March 2021 to the extent it had some bearing on defendant's challenges to the warrant in his case. But the September 2021 testimony by Michael Bennett about Caitlin in the unrelated Adjutant case, which was more than six months after Catilin provided information to

Agent Forte in March 2021 about Donovan, has no bearing on the matters in *this* case. As noted above in response to Claim 1(d), whether or not the informant Caitlin told Agent Forte the truth or not had no impact on the motion to suppress regarding Agent Forte's search warrant affidavit. *See* Sept. 24, 2021, Hearing Transcript, Dkt. No. 66 at 24:1-25:8 ("The lie by the confidential source is not a misstatement by the affiant unless he's lying about what the confidential source said to him."), attached as Exhibit G.

To satisfy the prejudice (i.e., materiality) prong of the *Brady* analysis, the defendant must show there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280; *see also United States v. Celestin*, 612 F.3d 14, 23 (1st Cir. 2010) (citing same). A "reasonable probability" exists if the evidentiary suppression "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Here, defendant does not, and cannot, claim that the result of his suppression motion would have been different had the Bennett testimony on September 22, 2021, been provided for his September 24, 2021 suppression hearing.

**C. The Alleged Failure to Disclose By Juror #4 Is Insufficient to Warrant Relief**

Defendant claims Juror #4 failed to disclose he "was under investigation for failure to remain unbiased in the cases he was presiding over" as a New Hampshire marital master and that he did not disclose his brother had been shot to death. Defendant attaches two articles from the *Union Leader*: a December 6, 2021 article reporting that a NH Circuit Court Judge John Curran allowed the man to continue to hear family court cases "despite muttering a vulgar expression under his breath" and a December 17, 2021 article reporting the apparent overruling of Judge Curran's decision by Judge David King. Petition at Exhibits E2, E3 and E4. This grievance does not identify any misleading or incorrect answer given by Juror #4 during the Court's voir

dire. Nor does defendant articulate a theory of actual bias resulting from the alleged non-disclosure. "Jurors cannot be faulted for failing to disclose information for which they were never asked." *Dall v. Coffin*, 970 F.2d 964, 969–70 (1st Cir. 1992).

The second alleged failure by Juror #4—failing to disclose information regarding his brother—is directly contradicted by the record. Juror #4 did in fact disclose the information regarding his brother.[2] *See* Transcript of Jury Selection Case 21-cr-88, Dkt. No. 65, at 22:9-26:10, attached as Exhibit H. Neither party sought to remove the juror for cause. This claim fails to establish any entitlement to relief.

**D. The Silencers Sentencing Enhancement Was Addressed on Direct Appeal**

The defendant's claim of error regarding the District Court's sentencing enhancement for silencers is not properly raised in his § 2255. The issue was addressed in his original sentencing, where Judge Barbadoro heard expert testimony from both the government and defense counsel, and in his direct appeal, where the First Circuit rejected the challenge. *Donovan*, 116 F.4th at 10-11. A defendant cannot bring an argument in a § 2255 motion that was resolved against him on direct appeal. *Murchu v. United States*, 926 F.2d 50, 55 (1st Cir. 1991).

**E. The Constitutionality Challenge to § 922(g)(1) Is Procedurally Defaulted**

Defendant's fifth claim in his petition is that § 922(g)(1) "is unconstitutional as applied." Petition at 19. Such an argument clearly could have been raised prior to trial or on direct appeal. By failing to do so, the claim is procedurally defaulted. *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005). A defendant, whose claim is procedurally defaulted, can proceed with the claim nevertheless if the defendant can show: (1) there is cause for the default and actual resulting

[2] During his same exchange, Attorney Stachowske flagged that he was aware the juror had served as a marital master.

prejudice or (2) he is actually innocent of the offense of conviction. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).

Here, there is no cause for the default, nor is there actual resulting prejudice. In June 2024, the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8) in *United States v. Rahimi*, 602 U.S. 680 (2024). While *Rahimi* involved a facial challenge to the statute, the Supreme Court's holding reaffirming the validity of restrictions on Second Amendment rights forecloses the argument the defendant seeks to advance here.

**IV. Conclusion**

For the reasons set forth above, the United Sates respectfully requests that the Court deny the defendant's petition for habeas corpus relief.

Respectfully submitted,

JOHN J. MCCORMACK
Acting United States Attorney

Date: January 27, 2025

By: /s/ Charles L. Rombeau
Charles L. Rombeau
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, NH 03301
(603) 225-1552