UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA
                                              ]
                                              ]
        v.                                    ]            Cr. No. 24-CV-392-JL-TSM
                                              ]
                                              ]
                                              ]
COREY DONOVAN                                 ]


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. §2255**


The Petitioner, Corey Donovan, petitions this Honorable Court to vacate his sentence, schedule an evidentiary hearing, and for any other relief to which he may be entitled.


### I. Introduction

The Sixth Amendment guarantees every criminal defendant not merely the presence of counsel, but the effective assistance of counsel. In this case, Corey Donovan ("the Petitioner") was deprived of that constitutional guarantee at multiple critical stages of the proceedings. Rather than subjecting the Government's case to meaningful adversarial testing, trial counsel failed to investigate critical evidence, failed to challenge key government witnesses, failed to preserve meritorious legal issues, and failed to adequately communicate with his client regarding the defense strategy that ultimately led to Petitioner's conviction.

The deficiencies in counsel's performance were neither isolated nor harmless. Counsel abandoned a potentially dispositive suppression challenge concerning the premature execution of the March 26, 2021 search warrant; failed to impeach government witnesses whose testimony contained material inconsistencies and contradictions; failed to investigate the role and credibility of Caitlin Fillion, a central witness with alleged ties to federal law enforcement; failed to meaningfully consult with Petitioner regarding important strategic decisions; failed to object to highly prejudicial Rule 404(b) character evidence or request limiting instructions governing

the jury's use of that evidence; and failed to investigate credible information suggesting potential juror bias after trial.

Each of these failures independently undermined the reliability of the proceedings. Collectively, they deprived Mr. Donovan of a fair trial and rendered the verdict fundamentally unreliable. Had counsel performed the basic functions required of reasonably competent defense counsel, there exists a reasonable probability that the outcome of the proceedings would have been different.

Accordingly, and for the reasons set forth below, Petitioner respectfully requests that this Court vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, grant an evidentiary hearing, and provide such additional relief as justice requires.

## II. Procedural Background

As Donovan had a prior felony conviction, the government charged him with a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Prior to the start of trial, Defense counsel filed a Motion to Suppress regarding the search of his property. The Court denied his motion and request for a Franks hearing. The district court also heard arguments on Donovan's motions in limine. Donovan's counsel argued that several pieces of evidence should be excluded under Federal Rule of Evidence 404(b). First, the defense sought to exclude evidence of a prior arrest where the police seized the same gun scope that was recovered during the March 26, 2021 search. The court allowed the prosecution to present this evidence but noted that if Donovan wanted a limiting instruction, he "should draft it in advance" and the court "would grant [the] limiting instruction."

On the second day of trial, the court noted that it was preparing jury instructions using its "boilerplate instructions" and had not "gotten any [instructions] from the parties that are anything other than the usual set of instructions." At that time, the government noted a proposed change to the instructions, but the defense raised no concerns. The next day, the court gave the parties an opportunity to review the draft jury instructions and return "with any proposals to modify" or "supplement the instructions." Following an off-the-record conference, the court stated on the record that "[t]he government proposed some minor changes to the instructions which [the court] agreed to make. [And defense counsel] made inquiries, which [the court] answered, about the instructions and [the court] will make those changes and give the instructions." The court then

"advised the parties that[,] in order to preserve any objection for purposes of appeal, they must object at the appropriate time after [it] give[s] the instruction before [it] send[s] the jury out to deliberate." Donovan did not object to the jury instructions during or after the reading of the instructions. The jury convicted Donovan.

On Appeal, Donovan lodged three challenges on appeal. He argues that the district court erred in (1) allowing Finnigan to invoke the Fifth Amendment, (2) failing to give his requested limiting instructions, and (3) finding that there was sufficient evidence to show that the oil filters were homemade silencers for the purposes of sentencing. The Court considered each other the challenges in turn and concluded that Donovan failed to establish a basis to disturb either the conviction or the sentence.

After exhausting his available remedies, the Petitioner filed a timely motion §2255. In it, he raises 6 separate grounds for relief all labeled as ineffective assistance of counsel claims.

### III. Governing Legal Standards

Before addressing the merits of the claims raised herein, the Petitioner respectfully sets forth the governing legal standards applicable to his request for relief under 28 U.S.C. § 2255.

Threshold Standard for §2255 Relief

To succeed on a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, the petitioner must illustrate that the "sentence was (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (citing *Hill v. United States*, 368 U.S. 424, 426-27 (1962)). Such relief is only available to individuals who are "prisoner[s] in custody under sentence of a court established by [an] Act of Congress. . . ." 28 U.S.C. § 2255(a). The catch-all fourth category includes only assignments of error that reveal "fundamental defects" which, if uncorrected, will "result[] in a complete miscarriage [**6] of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure." Id. at 428. In other words, apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident. See id. The burden is on the petitioner to

make out a case for section 2255 relief. See *Mack v. United States,* 635 F.2d 20, 26-27 (1st Cir. 1980). *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998)

A.  Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court emphasizes that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

If Inadequate Assistance of Counsel (IAC) is clearly shown on the face of the trial records "there may be no need for delay or the taking of extrinsic evidence . . . because the claim may be resolved from the face of the trial record. If so, the interest of prompt resolution of the matter favors permitting it to be raised on direct appeal." *See State v. Jerome Thompson*, 161 N.H. 507, 526 (N.H. 2011). If IAC is not visible at all on the trial record or requires additional record development to assess either the competence of the attorney or the prejudice resulting from the claimed error, then it requires investigation of facts beyond the record and are properly adjudicated as a method of collateral review in the superior court. *See Id* at 526-27. Ineffective assistance of counsel is analyzed the same under both the State and Federal Constitutions, citing New Hampshire Constitution Article 15, Part 1, and the 6th Amendments to the United States Constitution, respectively. The analysis is the same under both the Federal and the State Constitutions, *see Humphrey v. Cunningham*, 133 N.H. 727, 733 (1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced

a just result,". *State v. Anaya*, 134 N.H. 346, 351 (1991). The test for determining ineffectiveness requires, (1) Counsel's performance was deficient, *see State v. Fennell,* 133 N.H. 402, 405, (1990), and must overcome "the strong presumption that counsel's conduct falls within the limits of reasonable practice," see *State v. Faragi,* 127 N.H. 1, 4-5 (1985); (2) The defendant must show that counsel's alleged deficient performance actually prejudiced him or her by affecting the outcome of the proceeding. *See Fennell* supra. Prejudice is presumed, however, if the defendant can show that the attorney "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Anaya*, 134 N.H. at 351-52, quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984).

   B.  Ineffective Assistance of Counsel Claims are Properly Raised under §2255.

   A §2255 motion is the preferred vehicle for ineffective assistance of counsel claims. *Massaro v. United States*, 538 U.S. 500, 504-05. That is because a §2255 motion can supplement the trial record, which alone is often "incomplete or inadequate" to establish the *Strickland* prongs. *Id*. Mr. Donovan's case falls within that general rule. The relevant facts– particularly those concerning the reason behind trial counsel adopting certain strategies– are unclear. S*ee United States v. Moran,* 393 F.3d 1, 10-11 (1st Cir. 2004) (finding an ineffective-assistance claim pressed on direct appeal premature because it was impossible to tell whether counsel's decision was strategic or an oversight); *United States v. McGill*, 952 F.2d 16, 19 (1st Cir. 1991). In fact, Mr. Donovan is seeking an evidentiary hearing to address that question, as noted on the record during his direct appeal. Accordingly, Mr. Donovan's claims are not barred merely because they were not fully resolved on direct appeal.


**IV. LEGAL ARGUMENT**

   Mr. Donovan's claim of ineffective assistance of counsel rests upon Part I, Article 15 of the State Constitution, as well as the 6th and 14th Amendment of the Federal Constitution.

A. <u>Trial Counsel Was Ineffective for Failing to Investigate and Litigate the Issue</u>
<u>Regarding the Early Execution of the March 26, 2021 Search Warrant.</u>

1. <u>Deficient Performance</u>

Attorney Stachowske stated that Mr. Donovan requested he challenge the admissibility of
evidence seized pursuant to the March 26, 2021, search warrant, contending that law
enforcement executed the warrant prematurely in violation of the Fourth Amendment. Counsel
nevertheless elected not to raise the issue, stating that "according to the metadata, the SRT safety
sweep was conducted at 4:30 a.m., not the search warrant, and therefore the fruits of the
poisonous tree does not apply here." (October 12, 2021 Mot. To Suppress 3:2-6:3).
Consequently, no suppression motion was filed on this ground.

The record demonstrates that counsel neither fully litigated the issue. Although counsel
had obtained available evidence—including GPS data, time-corrected metadata, security camera
footage, reports and testimony concerning the timing of the seizure, and other law enforcement
records relevant to whether the warrant was executed prematurely—he failed to adequately
review or analyze that evidence for its potential value to the defense and did not present it to the
Court. The Court even goes on to say that "If the defendant is convicted, he will assert that Mr.
Stachowske was ineffective in failing to bring this argument and we will have to address it at
some point." *Id.* at 6:8-11.

Counsel's failure to fully investigate and present this evidence before the Court was not
consistent with the professional standards that prevailed at the time of trial, nor was it a
reasonable strategic decision. As established in *Strickland*, "strategic choices made after less than
complete investigation are reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation." *Id*. at 528 (quoting *Strickland v.
Washington,* 466 U.S.,668, 690 (1984)). The ABA's Standards for Criminal Justice state:

> "Defense counsel's investigative efforts should commence promptly and should explore
> appropriate avenues that reasonably might lead to information relevant to the merits of
> the matter... Defense counsel's investigation of the merits of the criminal charges should
> include efforts to secure relevant information in the possession of the prosecution, law
> enforcement authorities, and others, as well as independent investigation. Counsel's
> investigation should also include evaluation of the prosecution's evidence ... and
> consideration of inconsistencies, potential avenues of impeachment of prosecution
> witnesses, and other possible suspects and alternative theories that the evidence may
> raise." ABA Standards §4-4.1(a).

A reasonable attorney would have investigated the timing of the search, obtained and reviewed the available electronic and otherwise documented evidence, and presented the issue in support of suppression, or at a minimum used the evidence to impeach the government's witnesses. The validity of the search warrant could have affected the admissibility of critical evidence. Counsel's failure to investigate and litigate the issue falls below the standard of reasonable professional performance.

2. Prejudice

In order for counsel's inadequate performance to constitute a 6th Amendment violation, the Petitioner must show that counsel's failures prejudiced his defense *Strickland,* 466 U.S., at 692. To establish prejudice, "a defendant must show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 694.

The evidence obtained through the search was central to the government's case. If counsel had developed and litigated the premature-execution issue, there is a reasonable probability that:

- the Court would have suppressed evidence obtained through the search;

- the Court would have granted or expanded an evidentiary hearing;

- the defense would have obtained impeachment evidence undermining law-enforcement testimony;

- the trial result would have been different; or

- at minimum, the issue would have been preserved for appellate review.

Had counsel adequately investigated and litigated the execution issue of the search warrant, there is a reasonable probability that the result of the proceedings would have been different; accordingly, confidence in the conviction is undermined.

B. Trial Counsel Was Ineffective for Failing to Impeach Government Witnesses with Available Contradictory Evidence.

The government's case depended largely upon the testimony of ATF Special Agent John Forte, Agent Cook, and John Hubbard. Collectively, these witnesses supplied the factual basis

for the government's theory that Mr. Donovan knowingly possessed the firearm and ammunition recovered from the property. Despite possessing multiple sources of contradictory evidence—including sworn affidavits, investigative reports, photographs, search records, surveillance evidence, and conflicting witness testimony—trial counsel failed to effectively impeach these witnesses on critical factual issues.

    1. <u>Failure to Adequately Impeach Special Agent John Forte</u>

Special Agent Forte served as the case agent and principal government witness. His testimony supplied the foundation for the search of vehicles on the property and linked Mr. Donovan to the ammunition and firearm recovered during the search.

During cross-examination, Forte admitted that a material statement contained in the affidavit supporting the vehicle search warrant was inaccurate. Specifically, Forte acknowledged that the affidavit incorrectly described how he observed ammunition within the Jeep and conceded that the affidavit was wrong in that respect. (Day 3 Tr. at 75–76).

Although counsel elicited portions of this admission, he failed to fully develop the significance of the inconsistency before the jury. Counsel did not compare Forte's affidavit, testimony, reports, photographs, and other witness accounts to demonstrate the extent to which the government's narrative had changed over time. Counsel also failed to highlight that the agent who secured the warrant acknowledged that a significant factual statement included in the supporting affidavit was incorrect.

    2. <u>Failure to Adequately Impeach Agent Cook</u>

Agent Cook's testimony likewise provided fertile grounds for impeachment that counsel failed to exploit effectively.

Cook testified that standard ATF search procedures required evidence to be photographed in place before seizure, and that photographs were intended to document the original condition of the evidence (Day 2 AM Tr. 109:19-110:12). However, Cook also stated that he could see shotgun shells inside the Jeep from outside the vehicle before the warrant extension was obtained, even though the photographs taken at the scene did not clearly show the shells as he described them (Day 2a PM Tr. 14:15-20; 15:5-12,16-21; Day 2a PM Tr 17:16-23 )

Cook further acknowledged uncertainty regarding who moved items within the Jeep prior to later photographs being taken. Other testimony suggested that evidence and objects within the vehicle may have been altered or moved before all documentation was completed. Ultimately, defense counsel failed to synthesize these discrepancies and show how they undermined the reliability of the government's account regarding the discovery of the ammunition and firearm.

### 3. Failure to Adequately Impeach John Hubbard

John Hubbard's testimony was also susceptible to impeachment through contradictory evidence available to the defense.

Hubbard's testimony was significant because it supplied evidence concerning the use, occupancy, access, and control of areas of the property that formed the basis of the government's constructive possession theory. The defense possessed evidence that could have been used to challenge Hubbard's recollection, expose inconsistencies between his testimony and other witnesses, and demonstrate that multiple individuals had access to the locations where the firearm and ammunition were recovered.

Trial counsel failed to effectively confront Hubbard with these contradictions and failed to demonstrate to the jury that Hubbard's testimony conflicted with other evidence concerning ownership, access, control, and possession of the property and seized items.

### 4. Deficient Performance

No reasonable strategic basis existed for failing to fully impeach these witnesses. The government's case was largely circumstantial and depended upon the jury accepting the testimony of law enforcement witnesses and other government witnesses regarding possession, access, and control.

Competent counsel would have systematically presented the contradictions among the affidavit, investigative reports, photographs, search procedures, witness testimony, and physical evidence. Counsel's failure to do so permitted the jury to view each inconsistency in isolation rather than recognizing the broader pattern of conflicting accounts.

### 5. Prejudice

The prejudice resulting from counsel's deficient performance is substantial. The government's theory relied heavily upon witness credibility. Had the jury been presented with a thorough impeachment of Forte, Cook, and Hubbard, there is a reasonable probability that at

least one juror would have questioned the reliability of the government's investigation and the accuracy of its possession theory.

The cumulative force of the available impeachment evidence would have demonstrated that key government witnesses offered conflicting accounts regarding how evidence was discovered, how search procedures were conducted, what was visible prior to obtaining additional warrants, and who exercised control over the locations where the firearm and ammunition were found.

Because effective impeachment would have directly undermined the government's central theory of constructive possession, there exists a reasonable probability that the outcome of the trial would have been different. Accordingly, counsel's failure to adequately impeach Special Agent Forte, Agent Cook, and John Hubbard deprived Mr. Donovan of his Sixth Amendment right to the effective assistance of counsel.

There is a reasonable probability that proper impeachment would have produced a different outcome at suppression, trial, sentencing, or on appeal.

### C. Trial Counsel Was Ineffective for Failing to Communicate Adequately with the Defendant regarding his Defense and Trial Strategy.

Trial counsel was ineffective as there was an inherent attorney-client breakdown in communication leading up to and during the trial of the Defendant.

Here, the representation of trial counsel was constitutionally deficient: "Fell below an objective standard of reasonableness" and that deficient performance actually prejudiced the outcome of the case: "Reasonable probability, but for...errors, the result of the proceeding would have been different". *Strickland*, 466 US at 668; see also *Anaya*, 134 NH at 346.

### 1. Deficient Performance

The attorney-client relationship between Attorney Stachowske and Mr. Donovan had materially deteriorated. Mr. Donovan alleges that counsel failed to communicate with him, failed to accept his calls to discuss his trial defense, and misrepresented Mr. Donovan's position concerning continuances and speedy-trial rights. An attorney's constitutional obligations include meaningful consultation concerning important strategic decisions.

Counsel failed to adequately discuss trial strategy, available defenses, witness selection, evidentiary objections, and other significant matters with Petitioner. Some of these matters include counsel failing to consult the Defendant regarding filing a motion to the court for a continuance and yet receiving word of the Court's order for the continuance on June 21, 2021. In accordance with ABA Standards for Criminal Justice, "defense counsel should promptly communicate to the client every plea offer and all significant developments, motions, and court actions or rulings, and provide advice as outline in this Standards." ABA Standards §4.51(c).

Mr. Donovan also received his first copy of disclosed discovery on July 5, 2021 from Defense counsel despite having been arraigned more than 30 days earlier on May 26, 2021. "During a representation, defense counsel should provide the client with the client's file upon request, even if fees or costs are disputed or unpaid in whole or in part." ABA Standards §4-3.11. Prior to that, the Defendant reported receiving a blank flash drive on June 29, 2021 with no materials uploaded to it. Then 2 months later, the Defendant expected to receive an updated flash drive containing discovery but instead was given a *partially opened envelope* with no flash drive inside. "Absent a credible threat of immediate danger or violence, or advance judicial authorization, persons working in detention or imprisonment institutions should be prohibited from examining, monitoring, recording, or interfering with confidential communications between defense counsel and their detained clients."  ABA's Standards for Criminal Justice §4-2.2(d).

This claim is not premised upon poor communication alone. Rather, the lack of consultation directly contributed to counsel's failure to investigate Caitlin Fillion, identify impeachment evidence and preservice evidentiary objections.

Counsel's duties include consulting with the client about important decisions, keeping the client reasonably informed, and accurately conveying the client's position to the Court. *See* ABA Standards §4-5.1. Counsel may make tactical decisions, but counsel may not disregard the client's expressed position on fundamental matters, misrepresent the client's position, or allow a breakdown in communication to impair the defense.

Where counsel's lack of communication affects suppression strategy, trial preparation, witness investigation, continuances, or preservation of issues, the performance is constitutionally deficient.

2. Prejudice

Mr. Donovan was prejudiced because counsel's failure to communicate affected the presentation and preservation of core defense issues, including the Fourth Amendment challenge, witness impeachment, discovery use, and potential speedy-trial arguments.

There is a reasonable probability that, had counsel communicated properly and accurately presented Mr. Donovan's position:

- the Court would have addressed counsel-client conflict differently;

- substitute counsel or additional preparation time could have been considered;

- suppression issues would have been litigated more fully;

- the defense would have preserved speedy-trial objections; or

- trial strategy and presentation would have materially improved.

The breakdown in communication therefore supports relief or, at minimum, an evidentiary hearing.

D. Trial Counsel Was Ineffective for Failing to Preserve Objections and Request Limiting Instructions Concerning Rule 404(b) Evidence.

1. Deficient Performance

Before trial, the defense identified concerns regarding Rule 404(b) evidence and proposed limiting instructions. Despite recognizing the issue, trial counsel failed to make timely contemporaneous objections and failed to request or secure appropriate limiting instructions when the evidence was introduced.

The appellate record confirms that the issue was deemed waived or abandoned because defense counsel failed to object contemporaneously and did not submit or press proper instructions at trial.

Counsel's performance was deficient because a reasonable attorney who identifies prejudicial acts or evidence before trial must preserve the objection during trial and request limiting instructions when necessary. This is particularly important where the evidence risks

inviting the jury to convict based on propensity, character, or unrelated misconduct rather than the charged offense.

### 2. Prejudice

Mr. Donovan was prejudiced because the jury was exposed to prejudicial evidence without adequate limiting instructions and without proper preservation of the issue for appeal. There is a reasonable probability that:

- the evidence would have been excluded or limited;

- the jury would have been instructed not to use the evidence for propensity purposes;

- the verdict would have been different; or

- the appellate court would have reviewed the issue on the merits rather than treating it as waived.

The waiver itself demonstrates prejudice: counsel's failure deprived Mr. Donovan of meaningful trial protection and meaningful appellate review.

### E. Trial Counsel Was Ineffective for Failing to Investigate, Review and Use Discovery and Impeachment Materials Concerning Caitlin Fillion.

### 1. Deficient Performance

The record reflects that Caitlin Fillion was a material witness or source whose information was relevant to the investigation, the search warrant, and impeachment of the government's case. Materials concerning her included law enforcement reports, interview recordings, phone records, and other impeachment evidence.

Attorney Stachowske maintained throughout post-trial investigations that he was not aware of any evidence demonstrating false statements made by Agent Forte regarding Fillion's credibility as an informant. During a call with Attorney Brown on May 5, 2022, Attorney Stachowske states that he "did not recall the government calling to his attention that there was evidence demonstrating that Agent Forte had made additional false statements in his search warrant affidavit." nor did he recall "recall looking at the cell phone extraction of Fillion's phone prior to trial".

According to the fruits of an investigation conducted in support of a Motion to Dismiss, the discovery letter dated September 24, 2021 was downloaded by defense counsel no earlier than September 27, 2021 (three days after the *Franks* hearing). Def. Mot. to Dismiss at 11.

The Assistant District Attorney started that "while their records could not relay the exact date the recordings of Caitlin Fillion were disclosed [to the Defense], they can say that Attorney Stachowske and [the ADA] discussed [the Caitlin Fillion recordings] no later than September 20, 2021. On the following day, September 21, 2021, at approximately 8:57am Attorney Stachowske was sent a proposed "memorandum of understanding" that detailed their disclosure of the videos, as well as cell data from Ms. Fillion. As noted in the MOU:

> "As you are aware, the United States is in possession of certain law enforcement reports, cell phone records, and/or audio/video recordings of witness interviews (collectively, the "sensitive materials") related to your client, Corey Donovan."
> At approximately 5:07pm that day, Attorney Stachowske returned a signed copy of the

MOU.  (ADA Letter to Attorney Brown, p 2).

Attorney Stachowske also engages in an email exchange requesting a copy of Ms. Fillion's interviews from the US Attorney's office, on September 23, 2021. For these reasons, I believe Mr. Stachowske was aware of the interviews with Caitlin Fillion when he filed his motion to suppress on September 21st at 9:06pm. *Id.*

Trial counsel's duty included reviewing discovery, identifying impeachment material, investigating the informant's credibility, and using available materials in suppression litigation, Franks litigation, and at trial. Counsel failed to do so.

The omitted material was significant because the warrant affidavit allegedly relied, at least in part, on representations that the informant had provided truthful and accurate information. Evidence that the informant had lied to police or made inconsistent statements would have been directly relevant to:

- probable cause;
- a Franks challenge;
- impeachment of government witnesses;
- cross-examination of the informant or officers;

- trial credibility determinations; and

- the overall reliability of the government's investigation.

Counsel's failure to review and use such material was objectively unreasonable.

2. Prejudice

Mr. Donovan was prejudiced because Fillion's credibility as well as law enforcement's reliance on her information were material to the government's case. If counsel had properly used the Fillion materials, there is a reasonable probability that:

- the Court would have granted a Franks hearing or broader suppression relief;

- the defense would have undermined the search warrant affidavit;

- government witnesses would have been impeached more effectively;

- the jury would have received a materially different view of the investigation; or

- post-trial and appellate issues would have been preserved and presented in a stronger procedural posture.

The undiscovered or unused impeachment material therefore satisfies Strickland prejudice.

F. Both Trial and Appellate Counsel Failed to Investigate an Issue of Potential Juror Impartiality After It Came to Light Following Trial.

1. Deficient Performance

Shortly after the conclusion of his trial, it became public information that a juror involved in the Defendant's case, Bruce Dalpra (Juror No. 4), was under investigation for conduct relating to his inability to remain unbiased while serving in a judicial capacity. The investigation reportedly determined that Mr. Dalpra was unable to adequately assess his own bias, resulting in his removal from judicial duties, disqualification from future jury service, and eventual departure from the bench. Ultimately, Dalpra failed to disclose material information concerning his ability to serve as an impartial juror.

Trial counsel rendered deficient performance by failing to investigate and pursue this issue after the information became available. Once evidence emerged demonstrating that Juror No. 8 had been the subject of an investigation concerning bias and impartiality, competent

counsel would have sought additional inquiry into the juror's nondisclosure, moved for a new trial if warranted, and developed a factual record regarding the juror's ability to fairly consider Petitioner's case.

Appellate counsel likewise rendered deficient performance by failing to raise the issue on direct appeal or seek an appropriate remand for factual development. The information concerning Mr. Dalpra's investigation and subsequent removal from judicial service raised serious questions regarding the impartiality of a juror who participated in Petitioner's conviction. Reasonably competent appellate counsel would have investigated the matter and presented the issue to the Court of Appeals.

2. Prejudice

The Sixth Amendment guarantees a criminal defendant the right to trial by a fair and impartial jury. U.S. Const. amend. VI. That guarantee is violated when a juror conceals material information bearing on his ability to remain impartial or serves despite actual bias. See M*cDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

The right to an impartial jury is among the most fundamental protections guaranteed by the Constitution. There is, at a minimum, a reasonable probability that had counsel investigated and litigated the issue, the Court would have conducted further proceedings to determine whether Juror No. 4's nondisclosure deprived the Defendant of his right to a fair and impartial jury. Confidence in the reliability of the verdict is therefore undermined.

**V. Conclusion**

Thus, trial counsel was ineffective in violation of the Defendant's Sixth Amendment under the United States Constitution and Part 1 of Article 15 of the New Hampshire Constitution.

Respectfully Submitted,

Date: June 15, 2026

/s/ *John G. MacLachlan*
John G. MacLachlan

N.H. Bar No. 15596
Law Office of John G.
MacLachlan & Associates, LLC
5 Elm Street, Ste. 3
Danvers, MA 01923
Tel: (978) 745-9569
Email: jmaclachlan@jgmlaw.us

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on June 15, 2026, and in a manner specified herein; electronically served through CM/ECF to AUSA Charles Rombeau.

Respectfully Submitted,

Date: June 15, 2026

/s/ *John G. MacLachlan*
John G. MacLachlan
N.H. Bar No. 15596
Law Office of John G. MacLachlan
& Associates, LLC.
5 Elm Street, Ste. 3
Danvers, MA 01923
Tel: (978) 745-9569
Email: jmaclachlan@jgmlaw.us